David A. De Clue, Esq. Bainbridge Fire District
Based upon your letter and a telephone conversation with this office, you ask whether a fire district may loan one of its two emergency rescue vehicles to an adjoining fire district at such times when the latter's emergency rescue vehicle is inoperative and, specifically, whether the loaning of such vehicle constitutes the furnishing of "assistance" under General Municipal Law, § 209.
Article 5-G of the General Municipal Law, entitled "Municipal Cooperation", authorizes municipal corporations to enter into, amend and terminate agreements "for the performance among themselves or one for the other of their respective functions, powers and duties on a cooperative or contract basis" (General Municipal Law, § 119-o[1]). The term "municipal corporation" is defined as including "a fire district for the purpose of agreements among two or more fire districts" (id., § 119-n[a]). An agreement entered into under Article 5-G between fire districts must be approved by a majority vote of the board of commissioners of each district (id., § 119-o[1]). Such an agreement may contain provisions relating to the custody, operation and maintenance of personal property (id., § 119-o[2][e]); the manner of responding for any liabilities incurred as a result of the agreement and insuring against any such liability (id., § 119-o[2][i]); and providing that personnel performing under the agreement shall possess the same powers, duties, immunities and privileges which would ordinarily be available to them (id., § 119-o[2][b]).
Each of the participants in a mutual cooperation agreement must have the authority independently to perform the function in question (id., §§ 119-n[c], 119-o[1]). Since fire districts are authorized to provide emergency rescue services, two or more districts may cooperatively perform these services under Article 5-G.
We believe that a fire district may enter into a municipal cooperation agreement under Article 5-G with an adjoining fire district under which it would provide one of its rescue vehicles at such times when the latter district's vehicle is inoperative. We are of the opinion, however, that such an agreement would be subject to the over-all restriction that the vehicle would be made available only if it is not needed for rescue operations in the lending district. As a general rule, fire district property may not be disposed of or used outside of the district where it is required for fire and rescue operations in the district.* We think this would require the board of commissioners in the lending district to determine, in each instance where a request has been made for the vehicle, whether such vehicle is in fact necessary for rescue operations in the district. If a determination is made to provide the vehicle, it might be advisable for the board to make adequate provision for stand-by rescue service such as through the mutual aid system from either the adjoining district or from another authorized rescue squad (see, 1959 Op Atty Gen [Inf] 30).
You ask whether the loaning of a rescue vehicle can be justified on the grounds that it constitutes the furnishing of "assistance" under General Municipal Law, § 209, the statutory provision authorizing mutual aid. General Municipal Law, § 209(1), in pertinent part, authorizes fire departments and fire companies to answer "calls for assistance" outside of their regular service area. The terms "fire department" and "fire company" include emergency rescue squads organized within such departments and companies, and the term "assistance" includes the services of firefighting forces, fire police squads, emergency rescue and first aid squads "rendered in case of a fire or other emergency,
including stand-by service" (emphasis supplied; General Municipal Law, § 209[1]). A call to furnish assistance may be made by any person "aware of the peril involved" and the need for assistance or under any legally authorized or recognized plan for the furnishing of mutual aid "in cases of fire or other emergency" (ibid,; emphasis supplied). Individuals responding to calls for assistance outside of their service area are entitled to the same immunities and privileges available to them when performing their duties in their home area, and the home area is liable for the negligence of its firemen responding to such calls (ibid.). The aided area is responsible for "any loss or damage to, or expense incurred in the operation of, fire apparatus or other equipment used in answering calls for assistance" (id., § 209[2]). The board of commissioners of a fire district may restrict such outside service to such extent as it deems advisable (id., § 209[1]).
We believe that rescue equipment may be loaned under section 209 only in cases of actual emergencies requiring the immediate dispatching of personnel and equipment to the scene of an incident and, even then, only for the duration of the emergency (ibid.). In our opinion, section 209 does not authorize the loaning of rescue equipment for an indefinite period of time and where no actual emergency exists, as would be the case in the situation you describe. Thus, we think that a fire district may provide a rescue vehicle to an adjoining district under section 209 in response to a call for assistance arising out of an actual emergency. Once the emergency conditions have abated, however, we believe that the vehicle would have to be returned to the home area.
We conclude that a fire district may enter into a municipal cooperation agreement with an adjoining fire district under Article 5-G of the General Municipal Law under which it would provide one of its emergency rescue vehicles to the adjoining district at such times when the latter's rescue vehicle is inoperative.
* See, for example, Town Law, § 176(14) and (23), authorizing the lease of real property and the sale of real and personal property, respectively, of the district no longer required for district purposes; Town Law, § 176(16) and (22), authorizing a fire district to render emergency rescue service to another district in conjunction with a fire protection contract with that district, provided that such service can be supplied "without undue hazard" to the former district.